UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN GANTT<br><br>Defendant. | Criminal Action<br>No. 06-00699-1 (CPO)<br><br>OPINION |

**O'HEARN, District Judge.**

Defendant is a federal prisoner currently incarcerated at FCI Terre Haute, in Terre Haute, Indiana. He is proceeding *pro se* with a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 179.)[1] For the reasons stated in this Opinion, the Court will deny the Motion.

I.   BACKGROUND

This case arises from Defendant's conviction in 2008 on seventeen counts of armed bank robbery and other related charges. (ECF Nos. 48 & 142.) Defendant committed several of these offenses after serving most of a 96-month sentence on a previous federal bank robbery conviction from 1998 and while living in a halfway house. (PSR ¶ 34.)

On June 25, 2008, the Honorable Robert B. Kugler sentenced Defendant to an aggregate term of 1,788 months' imprisonment, followed by five years' supervised release. (ECF No. 153 at 2, 3.) Restitution in the amount of $121,598,95 was also ordered, as was a Special Assessment in

---

[1] Because Defendant has had prior related habeas matters, for the sake of clarity, references to "ECF" without additional reference to the case number are references to Crim No. 06-00699-1-CPO.

the amount of $1,700.  (*Id*. at 1, 5.)  Defendant appealed his conviction and it was affirmed by the Third Circuit in 2010.  (ECF No. 162.)

In October 2011, Defendant filed his first Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, alleging various instances of ineffective assistance of counsel.  (*Steven Gantt v. United States*, No. 11-cv-6191 (D.N.J. filed on Oct. 17, 2011) (ECF No. 1).  This motion was dismissed as untimely.  (*Id*., ECF No. 9.)  Defendant appealed and the dismissal was affirmed on May 8, 2024.  (*Id*., ECF No. 47.)

In June 2016, Defendant filed his second § 2255 Motion, this time pursuant to *Johnson v. United States*, 135 S.Ct. 2551 (2015).  (*Steven Gantt v. United States*, No. 16-cv-3671 (D.N.J. filed on June 22, 2016) (ECF No. 1).  However, upon discovering he was foreclosed from obtaining relief under *Johnson*, Defendant withdrew his Motion.  (*Id*., ECF No. 14.)

The instant Motion for Compassionate Release pursuant to 18 U.S.C. § 3582 (c)(1)(A) followed seven years later.  (ECF No. 179.)[2]

Defendant raises three grounds for his compassionate release.  First, he claims rehabilitation warrants relief.  Next, Defendant asserts he suffered by reason of the manner in which the prison handled the Covid-19 pandemic.  Last, Defendant says although his grandchildren have a caretaker, they need him as a male role model and to provide financial assistance.  (ECF Nos. 179 at 4–5 & 192 at 5.)  Although Defendant filed his Motion prior to the effective date for Amendments to the Policy Statement regarding § 2582 Motions, the Government addressed same in its Response (ECF No. 190 at 6 n.4) and Defendant replied to the Response (ECF No. 192). Pursuant to U.S.S.G. § 1B1.10 cmt. n.9, the court is to utilize the Policy Statement in effect at the

---

[2] On June 5, 2024, this matter was reassigned to the undersigned .  (ECF No. 193.)

time it decides a defendant's motion, regardless of when the motion was filed. As such, the amendments that took effect on November 1, 2023 are applicable to the instant Motion.

## II.    STANDARD OF REVIEW

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Prior to bringing a motion for reduced sentence before the sentencing court, defendants first "must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond." *Id*. "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. No. 10-434, 2020 U.S. Dist. LEXIS 72991, at *2 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also Raia*, 954 F.3d at 595. At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if, after finding extraordinary and compelling reasons warrant a reduction, such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and the applicable sentencing factors under § 3553(a) warrant a reduction. *United States v. Balter*, Crim. No. 93-536, 2024 U.S. Dist. LEXIS 84825, at *5 (D.N.J. May 9, 2024) (citing *United States v. Pabon*, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020)). As such, "[c]ompassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-1011, 2023 U.S. App. LEXIS 16162, at *3–4 (3d Cir. June 27, 2023). "[T]he defendant bears the burden of proving compelling and extraordinary reasons exist to justify compassionate release . . . by a

preponderance of the evidence." *United States v. Mims*, Case No. 2:19-cr-00527, 2021 U.S. Dist. LEXIS 169385, at *5 (D.N.J. Sept. 7, 2021) (cleaned up).

In cases such as here where the movant is a pro se litigant, the court must "liberally construe" Defendant's filings "with an eye toward their substance rather than their form." *United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

### III.   DISCUSSION

As a preliminary matter, the Court finds Defendant has satisfied the exhaustion requirements for bringing the instant Motion. (ECF Nos. 179 at 14–22 & 61 at 6.)

As to the second step of the analysis, recent changes to the Sentencing Guidelines Policy Statements now provide prisoners with additional avenues for seeking relief under 18 U.S.C. § 3852(c)(1)(A). *United States v. Shore*, Criminal No. 07-66, 2023 U.S. Dist. LEXIS 197911, at *9–10 (E.D. Pa. Nov. 2, 2023); *see also* U.S. Sentencing Commission, "Adopted Amendments," Apr. 27, 2023, available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 ("[T]he amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act.").

Instructed by these amendments, this Court shall address each of Defendant's claims in turn.

## A. Claims in Support of Compassionate Release

### 1. Rehabilitation

As amended, the Policy Statement to U.S.S.G. § lBl.l3 states as follows:

> Rehabilitation of the Defendant.--Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d). Here, presumably cognizant of the fact that rehabilitation alone is not a sufficient basis for granting compassionate release (ECF No. 179 at 4), Defendant maintains "rehabilitation along with the danger of the COVID-19 pandemic establish extraordinary and compelling reasons[.]" (*Id*..)  To that end, Defendant cites his completion of the Challenge Program and academic achievements while incarcerated, as well as his steady work as the "Head Cook" at FCI Terre Haute. (*Id*. at 2, 4.)[3] In support of his rehabilitative efforts, Defendant provides letters from two work supervisors and a foreman at FCI Terre Haute, as well as a letter from a correctional officer at the facility. (*Id*. at 23–26.)  However, the Government rebuts Defendant's depiction of himself as a model prisoner by raising his "serious disciplinary history" while in prison, including "nine infractions for offenses such as fighting, assault, disruptive conduct, stealing, and others." (ECF No. 190 at 8, Ex. B.)  In fact, an Individualized Needs Plan issued to Defendant on December 20, 2023, determined Defendant to be at a "medium risk recidivism level" and the long-term goal set for Defendant was to earn his GED by the end of 2024. (ECF No. 190, Ex. A at 3.)

---

[3] Although Defendant claims he "has taken care of his financial obligations to the Court[,]" the Government argues "[a]s of December 2023, some 15 years after commencing his term of imprisonment, [Defendant's] obligation balance was $254,615.14, because of interest accrued on the restitution that he owes for the money that he stole from the banks." (ECF No. 190 at 11.)

The fact that Defendant has been incarcerated for nearly 18 years on these charges and is currently deemed a "medium risk" for recidivism by the prison is of great concern to this Court. Although Defendant's achievements while in prison are encouraging, they are also expected of any individual serving time for commission of a crime. *See United States v. Bledsoe*, No. 22-2022, 2022 U.S. App. LEXIS 23011, at *3–4 (3d Cir. Aug. 18, 2022) (a "[defendant's] claimed efforts in furtherance of rehabilitation, while commendable, are 'expected,' they are, standing alone, neither 'extraordinary' nor 'compelling' for purposes of the compassionate-release standard[.]"); *see also USA v. Stewart*, No. 22-2770, 2023 U.S. App. LEXIS 30219, at *6 (3d Cir. Nov. 14, 2023) ("[R]ehabilitation cannot 'by itself' serve as an extraordinary and compelling reason for [a defendant's] release.") (citing U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t)). In short, , Defendant's rehabilitation argument lacks substance and absent any other circumstances that could constitute extraordinary or compelling reasons for a reduction, does not warrant relief.

### 2. Covid-19

In further support of his Motion, Defendant contends the prison "mishandled" the Covid-19 pandemic and as a result, he continues to suffer the consequences. (ECF No. 179 at 4–5.) Specifically, Defendant claims he "suffered and experienced solitary confinement setting for over two years" and despite being vaccinated, contracted Covid-19 (*Id*. at 1, 4),[4] which he says has become "Long Covid." (*Id*. at 1, 5, 7–8.)[5]

---

[4] In his Brief, Defendant refers to himself as "Mr. Hollingsworth." (ECF No. 179 at 4.) This Court assumes this as a typographical error by Mr. Gantt.

[5] Although Defendant raises the issue of "Long Covid", he did not present this issue to the Warden. Instead, Defendant merely argued Covid-19 was mishandled by the prison. (ECF No. 190, Ex. C at 1.)

6

As an initial matter, prison medical records do not bear out Defendant's contention that he currently suffers from Long Covid. (ECF No. 190, Ex. A at 2.) In fact, Defendant was asymptomatic after testing positive for Covid-19 in December 2020 (*Id*., Ex. E at 4) and reported "no complaints" when examined again in January 2021 (*Id*., Ex. E at 5). On September 5, 2023, Defendant was given a general physical, at which time his diabetes and hypertension were reassessed and it was determined he was "doing good." (*Id.*, Ex. E at 10.) Defendant did not complain of any pain at that time and the physician's examination of his cardiovascular, gastrointestinal, urinary, musculoskeletal, neurological and psychiatric statuses yielded normal results. (*Id*., Ex. E at 10–11.) Accordingly, Defendant's claim that he is entitled to compassionate release because he suffers from "Long Covid" is contrary to the record and provides no basis for relief.

To the extent Defendant argues the prison "mishandled" the manner in which prisoners were housed during the Covid-19 pandemic, this issue has been addressed—and rejected—by other Circuit Courts and within our own District. *See United States v. Mendoza-Contreras,* No. 22-5057*,* 2023 U.S. App. LEXIS 7530, at *10 (10th Cir. March 30, 2023) (affirming District Court's denial of compassionate release involving a defendant's claim that "the prison facility 'completely mishandled the COVID-19 pandemic[.]"); *United States v. Chambers*, No. 21-5756, 2022 U.S. App. LEXIS 9428, at *2 (6th Cir. April 7, 2022) (affirming District Court's denial of compassionate release involving a defendant's claim that "the Bureau of Prisons had mishandled its response to the COVID-19 pandemic and that federal prisoners faced far greater dangers from the disease than did non-prisoners."); *United States v. Haynes,* Case No. 1:18-cr-00058*,* 2023 U.S. Dist. LEXIS 143915, at *4–5 (D.N.J. Aug. 16, 2023) (rejecting compassionate release on the basis of Defendant's claim that the prison mishandled the pandemic by instituting "intensive lock downs, no recreational time, extremely limited personal hygiene options, limited phone use to

communicate with family, limited computer use for law library and family communication, no contact visits, cold meals always served late, and constant fear of getting infected and possible loss of life.") (cleaned up).

Finally, to the extent Defendant attempts to argue the "mishandling" of Covid-19 constituted cruel and unusual punishment (ECF No. 179 at 7–8, 20), such a claim is not cognizable in the context of a compassionate release motion. *See United States v. Iglesias*, CRIMINAL ACTION NO. 04-00647, 2021 U.S. Dist. LEXIS 9257, at *8 (E.D. Pa. Jan. 19, 2021) ("[Defendant's] Eighth Amendment challenge to the conditions of his confinement is not properly raised in his compassionate release Motion.") (citing *Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012)); *United States v. Butler*, 2020 U.S. Dist. LEXIS 104383, at *6 (D. Del. June 15, 2020) (even accepting the defendant's claim that Covid-19 was mishandled by prison officials as true, his additional claim that this "violat[ed] the inmates' Eighth Amendment rights does not provide a basis for Defendant's compassionate release[.]").

Accordingly, Defendant's Covid-19-based claims are all without merit and therefore do not constitute extraordinary and compelling reasons for release.

### 3. Family Circumstances

Next, Defendant claims he "has a host of grandchildren who desperately need a male father figure in their lives, as well as an additional provider. Mr. Gantt has already missed too many years of his grandchildren's childhood due to his regretable [sic] actions, and prays to finally have an opportunity to be the positive role model and father that his grandchildren deserve." (ECF No. 179 at 2.)

Although Defendant concedes his family circumstances do not fit into those specifically enumerated under the Policy Statement for 18 U.S.C. § 3583(c)(1)(A) at § 1B1.13(b)(3),[6] he asks the Court to apply the discretionary "catch all" provision. *See* U.S. SENT'G GUIDELINES MANUAL § lBl.l3(b)(5), p.s. (Nov. 2023) ("The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)" and therefore constitute extraordinary and compelling reasons for release).

Because Defendant has not provided the Court with any other facts or details to consider his family circumstances other than the general statements quoted above, this argument fails. Even assuming *arguendo* there existed additional factual circumstances to consider, Defendant's rehabilitation does not outweigh the severity of the crimes for which he is currently serving time, let alone the extensive criminal record throughout his entire adult life. In short, the notion that Defendant is needed to serve as a "male role model" to his grandchildren is insufficient to warrant relief.

### 4. Applicability of Sentencing Enhancements

In his originally filed motion, Defendant claims—in a very cursory manner—his "prior convictions that were used to enhance his current sentence is [sic] no-longer [sic] considered a crime of violence and if sentenced today he would be sentenced to far less time." (ECF No. 179

---

[6] Providing for: a child who is 18 years of age or older but cannot provide self-care because of a mental or physical disability; incapacitation of the defendant's spouse or registered partner where the defendant would be the only available caregiver; incapacitation of the defendant's parent when the defendant would be the only other person available to be a caregiver; and, other situations in which the defendant would be the only available caregiver for an immediate family member. U.S. SENT'G GUIDELINES MANUAL § lBl.l3(b)(3)(A)–(D), p.s. (Nov. 2023).

at 1.)  Defendant's Motion is devoid of any further details to support this claim.  However, in his Reply to the Government's Response, Defendant expands on this argument by claiming a "disparity" exists that warrants compassionate release, and that the court holds great discretion when deciding whether to grant same.  (ECF No. 192 at 6.)

As referenced above, Defendant previously filed habeas petitions and all issues related thereto—including those pertaining to the propriety of Defendant's sentence— were disposed of and affirmed on appeal.  On May 8, 2024, the Third Circuit Court of Appeals ruled on the last of Defendant's § 2255 claims, finding in pertinent part:

> This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a District Court denies a habeas petition on procedural grounds without reaching the merits of the underlying claims, a certificate of appealability should issue when the prisoner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and debatable whether the District Court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Gantt has not made such a showing. See United States v. Jordan, No. 22-2153, ---F.4th---, 2024 WL 1245344 at *7 (3d Cir. Mar. 25, 2024) (holding that armed bank robbery based on a violation of the first sentence of § 2113(a) is a crime of violence); Beckles v. United States, 137 S. Ct. 886, 897 (2017) (holding that that the Sentencing Guidelines are not subject to a challenge for vagueness under the Due Process Clause); United States v. Folk, 954 F.3d 597, 601 (3d Cir. 2020) (holding that a challenge to a designation as a career offender under the advisory Sentencing Guidelines is not cognizable under § 2255). Gantt's "motion for all facts to be considered . . ." is denied. The Court has considered Gantt's arguments as well as the District Court record.

*Steven Gantt v. United States*, No. 11-cv-6191 (D.N.J. filed on Oct. 17, 2011) (ECF No. 47).  Thus, Defendant is now attempting to re-litigate these same issues and his arguments lack merit.

Even assuming Defendant was now attempting to raise this "crime of violence" enhancement argument in the context of the Policy Statement's new provision for "unusually long" sentences, he could not succeed.  The Policy Statement provides, in pertinent part,

> **(6) Unusually Long Sentence.**--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law

> (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, ***but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances***.

U.S. SENT'G GUIDELINES MANUAL § lBl.l3(b)(6), p.s. (Nov. 2023) (emphasis added).

There is no dispute that Defendant is serving an unusually long sentence or that he has served at least ten years of his sentence. However, there is no change in the law that would produce a gross disparity between the sentence he is currently serving and the sentence likely to be imposed today . . . particularly after full consideration of his individualized circumstances. A simple reading of the Sentencing Transcripts in conjunction with the exhibits submitted by the Government in response to the instant Motion renders this conclusion abundantly clear. Aside from Judge Kugler's unequivocal recognition of the viciousness and dangerousness of the crimes committed by Defendant, he also concluded that after hearing the trial evidence and reviewing Defendant's criminal history, it was undoubtedly Defendant who was the planner and decision-maker behind the crime spree. (ECF No. 158 at 20.) Victims were terrorized and some suffered severe physical and psychological damage as a result of Defendant's acts—damage Defendant knew would occur by reason of his extensive prior experiences committing armed robberies. (*Id*. at 20.)

When assessing the "history and characteristics" of Defendant, Judge Kugler opined "[t]here's nothing good to say about Mr. Gantt at all." (*Id*.) From age 15 into adulthood, Defendant engaged in criminal activity and every time he was given an opportunity to redeem himself through parole in the State system, he failed to do so, resulting in repeated parole revocations. (*Id*. at 21.)

Perhaps most compelling to this Court, was Judge Kugler's assessment of Defendant's

potential (or lack thereof) for rehabilitation:

> Frankly, there is no hope of rehabilitating someone like this, given his record. There's no question in my mind and I think any rational observer's mind that Mr. Gantt has led a life of crime and would, if given the chance, continue to lead the life of crime in which he would prey on people, steal, rob, whatever he had to do. He simply is unable to lead a law-abiding life and, therefore, it's ridiculous to talk about rehabilitating him.

(*Id*. at 22.)

Judge Kugler proceeded to acknowledge the seriousness of Defendant's crimes, the need to provide just punishment, the need to promote respect for the law, and the need to afford adequate deterrence—the latter two of which the court saw no possibility of ever occurring with Defendant. (*Id*.) With regard to the need to protect the public from further crimes of Defendant, the court stated this was "[a] very significant factor, for he will commit further crimes if given the opportunity." (*Id*. at 23.) Judge Kugler considered what, if any, need there was for Defendant to have vocational and educational training, and determined medical care was not a factor. (*Id*.)

Finally, the court addressed defense counsel's disparity argument and determined it was without merit, as the co-defendant to which Gantt was comparing himself had confessed early on, cooperated with the Government, and provided evidence against his co-defendants. (*Id*. at 23–24.) In the end, Judge Kugler explicitly confirmed . . .

> I full well understand that the sentence I'm about to impose on Mr. Gantt means that he will never leave a prison alive. Frankly, the victims and employees who suffered through all of these bank robberies I don't think should shed any tears over that, nor should they [sic]. Mr. Gantt has demonstrated time and again he's not capable of living in society and abiding by the laws of society. There will be no further chances for Mr. Gantt. He showed no leniency to the victims and employees of these banks, and there's no reason for this Court to show him any leniency at all.

(*Id*. at 24.)

The information contained in Defendant's Motion for Compassionate Release and Reply does nothing to alter these conclusions. Rather, several of Defendant's contentions regarding the

12

extent to which he is rehabilitated and affected by Covid-19 are completely unfounded, if not blatant misrepresentations of the facts. Accordingly, Defendant is not entitled to relief on the basis of the nature of the sentence imposed.

### B. Further Analysis

Since the Court has determined Defendant fails to establish extraordinary and compelling reasons for a reduction in sentence, the Court need not assess the § 3553 factors or Sentencing Commission Policy. *See United States v. Pray*, Criminal Action No. 14-55-1, 2022 U.S. Dist. LEXIS 124497, at * 2 (E.D. Pa. July 14, 2022) (inmate's sentence may only be reduced if *all three* criteria are met: (1) a finding of extraordinary and compelling reasons; (2) § 3553 factors warrant reduction; and (3) a reduction "is consistent with applicable policy statements issued by the Sentencing Commission.") (emphasis added); *see also United States v. Castillo*, Criminal Action No. 12-cr-230-3, 2024 U.S. Dist. LEXIS 20260, at *6–7 (E.D. Pa. Feb. 5, 2024) ("Only if a defendant's circumstances qualify as 'extraordinary and compelling' will the court look to Section 3553(a) factors to determine whether, at the court's discretion, a sentence reduction is warranted.") (citing 18 U.S.C. § 3582(c)(1)(A)).

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release is denied. An appropriate Order follows.

DATED: 7/12/24                                   /s/ Christine P. O'Hearn
                                                                     **Christine P. O'Hearn**
                                                                     **United States District Judge**